**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00724-CR

_____

**TRAELYN SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1639259**

---

## MEMORANDUM OPINION

A jury found Traelyn Smith guilty of murder and assessed his punishment at

99 years' confinement. Smith appeals contending:

(1) the evidence is legally insufficient to prove beyond a reasonable doubt that he shot the victim or was a party to the victim's shooting; and

(2) he is constitutionally entitled to factual-sufficiency review and the

evidence is factually insufficient to support his conviction. We affirm.

## BACKGROUND

A grand jury indicted Smith for the murder of Quincy Jackson. Smith pleaded not guilty and was tried by a jury.

One evening, Brianna Arteaga was in her apartment on Jenkins Road when she heard six gunshots. After hearing them, she looked out her balcony's sliding door and saw a red car speeding away. Arteaga heard police sirens within minutes and went outside, where she saw Jackson lying on the ground across the street from another apartment building.

B. Martinez, a peace officer with the Pasadena Police Department, was the first officer to arrive at the scene of the shooting. Martinez found Jackson lying on the ground unresponsive and bleeding. Martinez saw that Jackson had been shot in the back several times.

Kenny Wong, a paramedic, also responded to the shooting. Like Martinez, Wong found Jackson unresponsive and bleeding. Wong bandaged Jackson's gunshot wounds and performed CPR but was unable to revive Jackson. With the approval of a physician supervisor, Wong pronounced Jackson dead at the scene.

J. Lawhorn, another peace officer with the Pasadena Police Department, also responded to the shooting. Lawhorn obtained video footage from an apartment

2

complex surveillance camera located across the street from the crime scene.

The manager of the complex, Linda Orellana, confirmed that the surveillance cameras were working at the time of the shooting. The State played the video footage during her testimony. It showed Jackson falling down as he was approached by a red car. A white car passed him from the opposite direction in the same timeframe.

W. Randles, a crime scene investigator with the Pasadena Police Department, was driving nearby on State Highway 225 when dispatch radioed about a red Ford Fusion suspected of being involved in the shooting. Randles was off duty and in an unmarked police vehicle. Within roughly three minutes of dispatch's broadcast, Randles spotted a red Ford Fusion. Randles notified dispatch of the car's location and then followed it until marked police vehicles arrived and began pursuing it.

J. Hinojosa, a peace officer with the Pasadena Police Department, was the first to begin pursuing the red Ford Fusion in a marked police vehicle after Randles spotted it on Highway 225. The State played Hinojosa's dash-camera footage during his testimony. Hinojosa had activated his lights and sirens, but the driver of the Fusion, later identified as Smith, did not stop. Hinojosa continued pursuing Smith onto Highway 610. By this point, Smith had increased his speed and was fleeing from Hinojosa. Smith drove on the shoulder to avoid and pass heavy traffic on 610.

Smith exited the highway. Hinojosa then dropped back and another officer, C. Gassett, became the primary pursuer. Smith traveled on the frontage road a while

and then got back on 610. Hinojosa opined that Smith did so to try and elude the pursuing officers. Smith later exited the highway again and entered a Houston neighborhood, where he exceeded the speed limit by as much as 20 miles per hour.

Smith eventually stopped, got out of the car, and fled on foot. With the aid of a K-9 unit, Hinojosa and other officers searched for Smith. The State played the search footage recorded by Hinojosa's body camera during his testimony. Officers found Smith hiding in a garage. When they found him, he was only wearing boxer briefs though it was February.

Gassett, the other Pasadena Police Department peace officer involved in the pursuit, also had activated his emergency lights and sirens. During his testimony, the State played the footage from Gassett's dash camera. Gassett saw Smith stop the Fusion, get out, and flee on foot. Smith was the only person to get out of the car and flee after it stopped. When Smith fled on foot, he was fully dressed in dark clothing.

Gassett did not immediately pursue Smith because he did not know whether other suspects remained in the Fusion. The initial broadcast from dispatch indicated there might be multiple occupants. Gassett detained another nearby man. Gassett's dash-camera footage, however, showed this other man had exited a white car that was parked in the vicinity. Gassett concluded this man was not a suspect based on his cooperation and a neighbor's reassurance that the man was not involved.

Sergeant S. Red of the Houston Police Department is a K-9 unit supervisor

4

and handler who helped oversee the search for Smith after he fled on foot. When the dog found Smith, he was hiding in a garage and had barricaded the garage door with a mattress to prevent entry. The dog was the first to enter and barked excitedly, indicating it had found its target. Officers did not find any weapons in the garage.

A. Sanchez, a peace officer with the Pasadena Police Department, arrived after Smith had been taken into custody. Sanchez sampled Smith's hands for gunshot residue after Smith was transported to jail. Kristina May, a trace evidence analyst with the Harris County Institute of Forensic Sciences, analyzed these samples and concluded that one hand had particles characteristic of "activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing" gunshot residue.

In his role as crime scene investigator, Randles later searched the Fusion. He found bullets, spent cartridges, a loaded magazine for a semiautomatic pistol, and a spring from a semiautomatic pistol. In the glovebox, Randles found a box of .40 caliber bullets. The bullets in the pistol magazine and the spent cartridges found elsewhere in the car were of the same caliber and manufacture as the box of bullets.

Tammy Lyons, a firearms analyst with the Harris County Institute of Forensic Sciences, analyzed a fired bullet recovered during the investigation. The record is unclear as to the where this fired bullet was found. No bullets were recovered from Jackson's body. Lyons concluded the bullet was consistent with a .40 caliber bullet.

5

J. Stephens of the Pasadena Police Department was the lead detective assigned to this case. He spoke to witnesses at the scene of the shooting. More than one witness told Stephens that a red Ford Fusion sped away from the scene. One witness reported that several people were in the Fusion, but he later said he could not tell how many were in the car due to its dark-tinted windows. Two other witnesses told Stephens that they saw a white car at the scene. But these two witnesses did not see the shooting. In fact, no witnesses actually saw the shooting.

Stephens viewed the video footage from the apartment complex's surveillance camera. The video indicated that Jackson was shot as the Fusion pulled up alongside him. A white vehicle eventually passed by, but Stephens testified that the video showed Jackson already had been shot. Stephens further testified that the location of Jackson's gunshot wounds were consistent with the Fusion's direction of travel, not the white car's. Stephens confirmed that Smith was the red Ford Fusion's owner.

Stephens testified that from the time the shooting was first reported to police until Smith was in custody just under 45 minutes had elapsed.

Stephens stated that officers never found the pistol used to shoot Jackson. According to Stephens, the semiautomatic pistol spring found in the Fusion could have resulted from the shooter disassembling the pistol. He opined that someone can do so mostly using a single hand in about half a minute even while driving.

Deputy P. Galvan of the Harris County Sheriff's Office, compiled Smith's

recorded jailhouse phone calls. One of these calls was played during Stephens's testimony. In this call, Smith told the other person on the line, "My shit is somewhere on 610." Based on the context, Stephens opined that Smith meant he discarded a pistol along the highway.

Lieutenant N. Gates, an investigator with the Harris County District Attorney's Office, analyzed data relating to Smith's cellular phone, which also was recovered from the red Ford Fusion. Specifically, Gates mapped out the location of the phone based on cellular tower data. This data showed the phone was in the general area where Jackson was shot about ten minutes before the police were called about the shooting.

Smith's stepfather, Byron Woods, testified that Smith could not use his left hand effectively. Smith's mother, Cheryl Foley, testified that her son's left hand was malformed due to a birth defect.

The jury found Smith guilty of murder and assessed his punishment at 99 years' confinement.

Smith appeals.

## DISCUSSION

### I. Legal Sufficiency

Smith argues the evidence is legally insufficient to prove beyond a reasonable doubt that he shot Jackson or helped another to do so.

**A.     Standard of review**

In a legal-sufficiency review, we view all the evidence in the light most favorable to the prosecution and determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). The jury is the lone arbiter of the weight of the evidence and witness credibility. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). We defer to the jury's resolution of evidentiary conflicts and the inferences drawn from the evidence as long as the inferences are reasonable ones supported by the evidence rather than mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). In deciding whether the jury's inferences are reasonable, we consider the combined and cumulative force of all the evidence. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). We do not sit as thirteenth juror and reweigh the evidence; our role is limited to guarding against the rare occasion when the jury does not act rationally. *Id.* Direct and circumstantial evidence are equally probative, and the latter alone can suffice to prove guilt. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). The evidence does not need to exclude every conceivable alternative to the defendant's guilt to be legally sufficient. *Id.*

**B.     Applicable law**

A person commits murder if he intentionally or knowingly causes another's

death or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes another's death. TEX. PENAL CODE § 19.02(b)(1)–(2). A motive to commit murder may be a circumstance indicative of guilt, but it is not an element of murder. *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). A person is responsible for a murder committed by another if the person intends to promote or assist the commitment of the murder and solicits, encourages, directs, aids, or tries to aid the other person to commit the murder. PENAL § 7.02(a)(2).

## C. Analysis

It is undisputed that no one saw the shooting. Nor did anyone see the occupants of the red Ford Fusion as it drove by Jackson. Thus, there is no eyewitness testimony that Smith pulled the trigger, was behind the wheel, or in the car. But eyewitness testimony is not required to prove murder. *See Gardner v. State*, 306 S.W.3d 274, 285–86 (Tex. Crim. App. 2009) (evidence sufficient to prove beyond reasonable doubt defendant murdered victim despite lack of eyewitness testimony that defendant did so or was even in state at time of offense); *see also Marquez v. State*, 725 S.W.2d 217, 236–38 (Tex. Crim. App. 1987) (potential juror properly excluded on basis he would require eyewitness testimony to find defendant guilty of murder).

The record contains a substantial amount of evidence connecting Smith to the drive-by shooting of Jackson. This includes evidence that:

- video surveillance showed a red car slow as it approached Jackson on the street, after which Jackson fell to the ground;

- multiple witnesses reported they saw a red car speed away from the scene of the shooting;

- when officers tried to stop a red Ford Fusion nearby within minutes of the shooting, its driver refused to stop and tried to evade them;

- when the red Ford Fusion finally stopped, it had a single occupant, the driver, who then fled from officers on foot;

- with the assistance of a canine, officers found this man hiding in a garage;

- this man, identified as Smith, had gunshot residue on one of his hands;

- data associated with Smith's cell phone, which was recovered from the Fusion, placed the phone in the shooting's vicinity shortly beforehand;

- officers found .40 caliber spent cartridges and bullets, a loaded pistol magazine, and a semiautomatic pistol spring in the red Ford Fusion;

- forensic evidence showed that whoever shot at Jackson used bullets that were consistent with a .40 caliber firearm; and

- in a recorded jailhouse call, Smith made statements that a detective interpreted to mean he tossed a pistol while fleeing on the highway.

When viewed in the light most favorable to the prosecution, these circumstances and the reasonable inferences therefrom are legally sufficient to prove that Smith murdered Jackson, or took part in his murder, beyond a reasonable doubt.

Smith argues that the evidence is insufficient because the State did not present evidence connecting him with Jackson or suggesting a motive for the shooting. But motive is not an element of the crime. *Colone*, 573 S.W.3d at 266. Thus, lack of evidence of motive cannot render the evidence legally insufficient. *See Bland v.*

10

*State*, No. 01-13-00303-CR, 2014 WL 4855024, at *5 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, no pet.) (mem. op., not designated for publication).

Smith also argues that peace officers and investigators failed to secure evidence that would have been easy to obtain and could have exonerated him. For example, at trial defense counsel questioned officers about their ostensible failure to adequately investigate whether the occupants of the white vehicle shot Jackson.

But the State was not required to disprove all reasonable alternative hypotheses inconsistent with Smith's guilt to present legally sufficient evidence to support the jury's guilty verdict. *Johnson*, 560 S.W.3d at 226; *Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018). Instead, in assessing the legal sufficiency of the evidence, we consider only whether the inferences necessary to prove Smith's guilt are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). In making this assessment, we cannot speculate based on hypothetical evidence that the State did not present. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

Based on his review of the surveillance footage, Detective Stephens opined that the occupants of the white car could not have shot Jackson. The jury saw the surveillance footage for itself. On this record, we cannot say that the jury's implicit rejection of Smith's alternative hypothesis was irrational, given the evidence the jury

11

heard and the reasonable inferences it could have drawn from this evidence. *See, e.g.*, *Ballard v. State*, 537 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (based on evidence jury could have reasonably rejected defendant's alternative hypotheses that another member of household with access to his computer could have downloaded child pornography or neighbor could have downloaded child pornography using defendant's IP address since his wireless network was not password protected); *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (rejecting defendant's argument that evidence was insufficient to prove murder given that his defensive theory was just as plausible as State's theory).

Similarly, Smith argues it is possible that friends borrowed his car, committed the murder, and then returned the car to him before the police spotted the car. In support of this alternative hypothesis, Smith relies solely on testimony given by his mother and a family friend during the punishment phase. In summary, they testified that Smith attracted unsavory friends who used him, including for transportation, due to his vulnerability as a physically disabled person. But evidence the jury heard only after it already rendered its guilty verdict cannot be used to challenge the sufficiency of the evidence supporting the verdict. *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993); *Carballo v. State*, 303 S.W.3d 742, 746 n.3 (Tex. App.—Houston [1st Dist.]

12

2009, pet. ref'd); *State v. Moreno*, 297 S.W.3d 512, 521–22 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Because the defense did not introduce the testimony of Smith's mother and family friend as to Smith's vulnerability and exploitation by friends during the guilt-innocence phase of trial, we cannot and do not consider it in assessing the legal sufficiency of the evidence of Smith's guilt.

We overrule Smith's challenge to the legal sufficiency of the evidence.

## II.     Factual Sufficiency

Smith argues the Texas Constitution entitles him to a separate review of the evidence for factual sufficiency and that the denial of factual-sufficiency review under Texas law violates his rights to due process and equal protection.

Except as to affirmative defenses, the Court of Criminal Appeals has abolished factual-sufficiency review of convictions. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011). Thus, we review convictions solely for legal sufficiency, even when the appellant challenges the factual sufficiency of the evidence. *Merritt*, 368 S.W.3d at 525 n.8; *Lipscomb v. State*, 526 S.W.3d 646, 654 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Since the Court abolished factual-sufficiency review, we have repeatedly rejected requests to revisit the issue. *E.g.*, *Vernon v. State*, 571 S.W.3d 814, 820 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). We have done so even in the face

of constitutional challenges like the ones Smith asserts. *E.g.*, *Edwards v. State*, 497 S.W.3d 147, 156–57 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (rejecting due-process claim); *Jones v. State*, 458 S.W.3d 625, 632 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (rejecting claim that failure to review for factual sufficiency resulted in unconstitutional denial of meaningful review).[1] Because we are bound by the Court's articulation of the standard of review, we reject Smith's claim that he is entitled to a separate factual-sufficiency review. *See Kiffe v. State*, 361 S.W.3d 104,

---

[1] *See also Rivera v. State*, No. 01-17-00351-CR, 2018 WL 3352990, at *4 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (mem. op., not designated for publication) (rejecting due-process and equal-protection claims); *Beckett v. State*, No. 01-16-00505-CR, 2017 WL 5623532, at *3–4 (Tex. App.—Houston [1st Dist.] Nov. 21, 2017, no pet.) (mem. op., not designated for publication) (rejecting contentions that Texas Constitution requires separate factual-sufficiency review and that not doing so deprives defendant of meaningful appellate review); *Cozart v. State*, No. 01-15-01007-CR, 2017 WL 3910696, at *4–5 (Tex. App.—Houston [1st Dist.] Sept. 17, 2017, pet. ref'd) (mem. op., not designated for publication) (rejecting claim that lack of factual-sufficiency review is unconstitutional); *Paredes v. State*, No. 01-15-00708-CR, 2017 WL 817170, at *3 (Tex. App.—Houston [1st Dist.] Mar. 2, 2017, pet. ref'd) (mem. op., not designated for publication) (rejecting due-process and equal-protection claims); *Whitfield v. State*, No. 01-15-00316-CR, 2016 WL 3542030, at *2 (Tex. App.—Houston [1st Dist.] June 28, 2016, pet. ref'd) (mem. op., not designated for publication) (rejecting due-process claim); *Tan v. State*, No. 01-15-00511-CR, 2016 WL 3542255, at *3 (Tex. App.—Houston [1st Dist.] June 28, 2016, pet. ref'd) (mem. op., not designated for publication) (rejecting due-process claim and claim that lack of factual-sufficiency review violates Texas constitutional provision making intermediate appellate decisions conclusive on fact issues); *Granados v. State*, No. 01-10-00547-CR, 2011 WL 5026406, at *6 n.3 (Tex. App.—Houston [1st Dist.] Oct. 20, 2011, pet. ref'd) (rejecting claim that lack of factual-sufficiency review violates Texas constitutional provision making intermediate appellate decisions conclusive on fact issues).

109–10 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (rejecting constitutional challenge to Court's precedent abolishing factual-sufficiency review).

We overrule Smith's challenge to the factual sufficiency of the evidence.

## CONCLUSION

We affirm the trial court's judgment.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Adams.

Do not publish. TEX. R. APP. P. 47.2(b).