

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00122-CV

## IN THE MATTER OF J.P., A JUVENILE

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2021-133-J**

## MEMORANDUM OPINION

J.P. was charged by a Petition for Determinate Sentencing with acts of delinquent conduct which included the violation of certain criminal law provisions; namely three counts of Indecency with a Child by Contact. *See* TEX. FAM. CODE §§ 51.03, 53.045(a)(12); TEX. PENAL CODE section 21.11(a)(1). At trial, the jury found beyond a reasonable doubt that J.P. committed the conduct alleged, and the trial court sentenced J.P. to twelve years confinement, for each count, with the Texas Juvenile Justice Department with the possibility of transfer to prison. Because the evidence is sufficient to support the jury's determination that J.P. engaged in delinquent conduct as alleged in Count 1 of the Petition, and because J.P.'s evidentiary complaint was not preserved, we affirm the trial court's judgment.

SUFFICIENCY OF THE EVIDENCE

J.P. was charged in Count 1 with engaging in sexual contact with P.S. by touching the breast of P.S., a child younger than 17 years of age. *See* TEX. PENAL CODE § 21.11(a)(1), (c)(1). In his first issue, J.P. contends the evidence was insufficient to support the specific element that he had touched the breast of P.S.

Although juvenile proceedings are considered to be civil in nature, an adjudication of delinquent conduct requires proof beyond a reasonable doubt. TEX. FAM. CODE § 54.03(f). Therefore, when reviewing the sufficiency of the evidence for a juvenile adjudication, we apply the criminal standard of review because the State bears the same burden of proof as it does in criminal cases. *See In re C.P.*, 998 S.W.2d 703, 708 (Tex. App.—Waco 1999, no pet.).

Our standard of review of a sufficiency issue in a criminal case has been expressed as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex.

Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

### *J.P.'s Argument*

Because the word used in the statute, "breast," is not defined, J.P. asserts that we should use a narrower interpretation of the word and find the evidence insufficient to support the element that J.P. touched P.S.'s breast. J.P. argues that in a medical dictionary, the definition of breast cross references to "mamma" which is defined as the origin of milk secretion. *See* STEDMAN'S MEDICAL DICTIONARY 210, 917 (25th ed. 1990). Thus, J.P. argues, the term "chest area" as P.S. testified to does not sufficiently describe "the breast." However, the definition asserted by J.P. limits the word "breast" as

belonging to a female and possibly a developed female. The Court of Criminal Appeals has declined such limitation of the definition, holding that "[u]nder the current statutory scheme, a 'breast' does not have to belong to a female or be developed." *Arroyo v. State*, 559 S.W.3d 484, 488 (Tex. Crim. App. 2018). Thus, we also decline to limit the definition of the statutory term, "breast," as J.P. asserts.

*Evidence*

P.S. was 15 years old at the time of the trial. She agreed that "some hard things" happened to her when she lived in McLennan County with her mother, stepfather, stepbrother—J.P., and her brother. She was about seven or eight years old when those "hard things" started and about 11 years old when they stopped when she moved in with her father. P.S. agreed with the State that while living in a house in Bellmead, J.P. touched P.S.'s "chest area."[1] P.S. was nine or ten years old at the time. She said that "[i]t would be usually at night when we were all fixing to go to bed…I would usually stay up later than everyone else playing on my computer; and he came in there one night and asked. I told him no, but he still did it anyway." She said she felt nasty and horrible when J.P. did that. She told her grandmother first and then her father. Her grandmother went to her mother and her mother refused to believe it.

In a recorded interview with law enforcement introduced into evidence, J.P. admitted to sending P.S. text messages which included asking P.S. to show him her vagina and "boobs," watching pornography, and having pornography on his search

---

[1] The term "chest area" was used by the State. To avoid questions of evidentiary sufficiency, the State should endeavor to use the statutory terms when questioning witnesses rather than general terms.

history on his phone. J.P. denied touching P.S. or having her touch him.

*Application*

The evidence in this case is similar to the evidence presented in *Arroyo*. There, the Court of Criminal Appeals, noting that the statute was now different, distinguished a prior holding of the Court in *Nelson v. State*[2] because of additional evidence that the victim (1) described the defendant's hand as moving "down [her] chest," (2) described the activity as something she knew was wrong, (3) described the activity as progressing to touching her vagina, (4) stated that the defendant engaged in the same conduct on the three occasions in which he touched the victim in a sexual manner, and (5) was only nine years old at the time of the conduct and, due to her age, may have been more likely to refer to her breast area as her "chest." *See Arroyo v. State*, 559 S.W.3d 484, 488-89 (Tex. Crim. App. 2018).

Here, along with agreeing that J.P. touched her "chest area," P.S. testified that the touching was offensive, and she protested against it; "I told him no, but he still did it anyway." She also stated that the touching made her feel "nasty" and "horrible." She was between nine and 11 years old when this happened. The jury was shown pictures of P.S. when she was nine and when she was 11 years old and, consequently, could have inferred that P.S.'s breasts were not developed at the time of the incident and that J.P. touched P.S.'s breast, especially since J.P. admitted to asking to see P.S.'s "boobs."

---

[2] *Nelson v. State*, 505 S.W. 2d 551 (Tex. Crim. App. 1974). The *Nelson* opinion reviewed the sufficiency of the evidence under a predecessor statute of indecency by contact and prior to the sufficiency standard expressed in *Jackson v. Virginia*, and reversed the conviction where the victim only testified that the defendant rubbed the victim's chest.

Further, P.S.'s testimony about J.P. touching her chest was given in the context of what all J.P. had done to her, including J.P. making P.S. touch his "private area," showing P.S. pornographic videos, and asking P.S. to view naked images of himself.

*Conclusion*

Reviewing all the evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found the specific essential element of touching P.S.'s breast beyond a reasonable doubt. J.P.'s first issue is overruled.

**EXTRANEOUS OFFENSE EVIDENCE**

In his second issue, J.P. argues that the trial court erred in allowing the introduction of irrelevant, extraneous offense evidence. J.P. complains that, "[u]nder the guise of impeachment, the State introduced the completely collateral allegation that Respondent possessed child pornography." For this complaint, J.P. specifically relies on and recites the following testimony from the investigating officer which J.P. asserts was "testimony of the uncharged possession of child pornography:"

> STATE: Did you have the phone? Did you send the phone offer to Baylor Police Force to do a forensic analysis of that phone?
>
> WITNESS: I did, yes.
>
> STATE: And once the forensic analysis of the phone is performed; did that come back to you for review?
>
> WITNESS: Correct, yes.
>
> STATE: Were you able to review that phone?
>
> WITNESS: I was, yes.

STATE: During the course of your review of that phone; did you find anything that, well anything that proves that statement was false?

WITNESS: Yes.

STATE: Without getting too graphic Detective, what did you find in that phone?

WITNESS: The messages between [J.P.], and three other girls, were sending explicit pictures to each other.

STATE: And at this time he is 14 years old?

WITNESS: Correct.

STATE: So, under the definition of child pornography that would essentially be child pornography, correct?

WITNESS: Correct.

STATE: You saw text messages and images between him and what purportedly to be three female individuals?

WITNESS: Correct.

STATE: Were any of those individuals P[.S.]?

WITNESS: Not that I could tell.

STATE: And um, were those images pornographic images?

WITNESS: Yes, they were.

STATE: Were some of those pornographic videos?

WITNESS: Yes, they were.

STATE: Were the messages that were sent were they quite explicit?

WITNESS: Yes.

STATE: Were they explicit of a sexual nature?

WITNESS: Yes, they were.

STATE: Within those are there specific request[s] being made by both parties?

J.P. objected after this last question and asserted that "unless *these videos* contain P.[S.], then what video of other people not before the Court and jury today, it's irrelevant." (Emphasis added).

On appeal, although J.P. mentions the concept of relevant evidence, his argument is that the testimony about the pictures and videos found on J.P.'s cell phone presented inadmissible extraneous offense evidence. However, J.P. did not assert at trial that the pictures and videos found on J.P.'s cell phone were inadmissible extraneous offenses. Rather, J.P. only objected that the videos were irrelevant. Thus J.P.'s issue on appeal does not comport with the objection raised at trial.

To preserve a complaint for appellate review, the issue on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). "[A]n objection stating one legal theory may not be used to support a different legal theory on appeal." *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g). Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Because J.P.'s issue on appeal does not comport with the objection raised at trial, nothing is preserved for review.

Even if the issue comports with the objection at trial, the objection was untimely. Generally, to preserve error there must be a timely and specific objection to the

complained-of evidence.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *Davis v. State*, 313 S.W. 3d 317, 347 (Tex. Crim. App. 2010).  A complaint is timely if it is made "as soon as the ground of objection becomes apparent." *Pena v. State*, 353 S.W. 3d 797, 807 (Tex. Crim. App. 2011).

Well before J.P. objected, the jury had already heard that pictures and videos, which the investigating officer determined to be child pornography, had been found on J.P.'s cell phone.  No objection was raised until the State asked whether text messages that accompanied the pictures and videos included "specific request[s] being made by both parties[.]"  J.P.'s objection was too late, and thus, his issue on appeal is not preserved.

J.P's second issue is overruled.

**CONCLUSION**

Having overruled each issue raised by J.P., we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Affirmed
Opinion delivered and filed February 8, 2023
[CV06]

