# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-24-00237-CR

---

Scott Edward Vanzandt,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
19th District Court of McLennan County, Texas
Judge Thomas C. West, presiding
Trial Court Cause No. 2020-953-C1

---

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Scott Edward Vanzandt was charged with two counts of indecency with a child for touching the genitals (count one) and the breast (count two) of his neighbor, C.T., in 2019. *See* TEX. PENAL CODE ANN. § 21.11. After finding Vanzandt guilty on both counts, a jury assessed his punishment at seventeen years in prison on each count. The trial court ordered those sentences to be served consecutively. In three issues on appeal, Vanzandt contends that the

evidence was insufficient to support his conviction in count two, that the trial court erroneously admitted extraneous-offense testimony in violation of Texas Rule of Evidence 403, and that the written judgments should be modified to reflect that the complainant was sixteen years old at the time of the offenses. We affirm.

## Sufficiency of the Evidence – Count Two

In his first issue, Vanzandt argues that the evidence is insufficient to support his conviction in count two for touching C.T.'s breast because C.T. denied the charged conduct in her testimony, and the outcry testimony was "not more than a generalized insinuation that a sexual offense had occurred." We disagree.

STANDARD OF REVIEW AND APPLICABLE LAW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v.*

*State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Article 38.072 of the Code of Criminal Procedure permits testimony from the first person eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). A "statement" about the offense can include nonverbal conduct intended by the person as a substitute for verbal expression. *See* TEX. R. EVID. 801(a); *see Cervantes v. State*, 594 S.W.3d 667, 673-74 (Tex. App.— Waco 2019, no pet.). Courts have construed a statement "about the offense" to mean a statement that "in some discernible manner describes the alleged offense" and is more than "a general allusion" of sexual abuse. *Garcia v. State,* 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Because this type of evidence is substantive evidence with some probative value, it is, by itself, sufficient to support a jury's verdict of conviction. *Id.* When the requisites of article 38.072 are met, there is no requirement that the testimony of the outcry witness be corroborated or substantiated by the victim's testimony or independent evidence. *Id.* at 874.

RELEVANT FACTS

C.T.'s mother testified as the outcry witness at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072.[1] She recalled that shortly after C.T.'s sixteenth birthday, she overheard C.T. on a phone call stating that she felt uncomfortable walking down their street. C.T.'s mother questioned her about the source of her discomfort. C.T. stated that Vanzandt invited her over to give her a birthday gift, and "when she got there, he came up from behind her, kissed her, and then touched her inappropriately in her private areas." C.T.'s mother explained that C.T. did not verbally identify her "private areas," but she used her "hands and motions" to indicate where she was touched. When asked to describe C.T.'s hand gestures, her mother stated, "[h]er hands noted it was in the upper region area around her breast location." She described C.T.'s demeanor during the conversation as "upset and crying" and noted that she had to "calm her down."

C.T. was twenty years old when she testified at trial. She recalled that Vanzandt invited her over to give her a birthday gift in September of 2019, shortly before her sixteenth birthday on October 2nd. She remembered that some of the other neighborhood children were playing in the driveway when

---

[1] Prior to testifying in front of the jury, the trial court held a hearing outside of the jury's presence and determined that C.T.'s statements to her mother were reliable based on the time, content, and circumstances of the statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2).

she walked through the door leading from the garage into Vanzandt's home. Once inside, Vanzandt hugged her and gave her $20. When C.T. turned around to leave, she described that Vanzandt was standing behind her and his "left arm was across my chest and his right arm was between my legs."

When pressed to describe Vanzandt's actions in more detail, C.T. explained, "His left arm was more from elbow to wrist length was [sic] around the top. And I'd say his hand was on my right shoulder […] Kind of like if you were to like give someone a hug from behind." The State directly asked whether Vanzandt touched her breast when he was hugging her from behind, and C.T. responded, "I don't think so that I remember. I just remember his left arm was like holding across my chest just like hand to shoulder." C.T. did not recall participating in a forensic interview, and she did not recall telling the forensic interviewer that Vanzandt's right hand squeezed her left breast during the hug. She did, however, specifically recall that Vanzandt touched her vagina over her clothes with his hand.

No additional testimony or other evidence was admitted at trial about Vanzandt touching C.T.'s breast.

ANALYSIS

In support of his position, Vanzandt attempts to distinguish this case from our unpublished opinion, *Luttoschka v. State*, No. 10-23-00168-CR, 2024

WL 4457567, at *1-4 (Tex. App.—Waco Oct. 10, 2024, no pet.) (mem. op., not designated for publication), and analogizes the outcry testimony in this case to the complainant's mother's testimony in *Ward v. State*, No. 10-22-000367-CR, 2023 WL 3628107, at *3-4 (Tex. App.—Waco May 24, 2023, no pet.) (mem. op., not designated for publication).  We are not persuaded.

In *Luttoschka*, the complainant testified at trial and denied the indicted conduct of the defendant's finger penetrating his anus.  *Luttoschka*, 2024 WL 4457567 at *2.  The child's mother testified as the outcry witness.  *Id*.  She testified that when she questioned the child about whether anyone had touched his "no-no areas," the child demonstrated with his hand what the defendant had done to him by showing his "fingers going into his crack."  *Id*.  Vanzandt mistakenly argues on appeal that we found the evidence was sufficient to sustain Luttoschka's conviction based on the testimony from the outcry witness *and* additional evidence.  Rather, we held that

> [The mother's] testimony did not need to be corroborated or substantiated. Because the jury is the sole judge of the credibility and weight to be given the witnesses' testimony, it could have believed [the mother] rather than [the child] as to how Luttoschka sexually assaulted [the child]. And because Luttoschka's conviction can be supported by the testimony of [the mother] alone, we find the evidence sufficient to support the challenged element.

*Id.* at *3.  We then observed that other evidence of Luttoschka's guilt existed outside of the outcry witness's testimony.  *Id.*  Our comments, however, did not

modify our holding that the outcry witness testimony was sufficient on its own to sustain the conviction. We performed this additional analysis in the event that, "[i]f upon further review it is determined [the mother's] testimony alone is not otherwise sufficient, with this additional testimony, we find the evidence sufficient to support the challenged element." *Id.*

In *Ward*, the trial court determined that the forensic interviewer was the proper outcry witness at trial instead of the child's mother. *Ward*, 2023 WL 3628107 at *4. Ward challenged that determination on appeal. We found no abuse of discretion because the complainant's statement to her mother that "he did everything to me" was a generalized insinuation that an indiscernible sexual offense occurred. *Id.*

Here, C.T.'s mother was designated as the outcry witness pursuant to article 38.072, and her testimony was admitted without objection. Therefore, her testimony constituted substantive evidence that did not need to be corroborated or substantiated by C.T.'s testimony or other independent evidence. *See Rodriguez*, 819 S.W.2d at 874. Further, C.T.'s mother's testimony is distinguishable from the statement in *Ward* and comparable to the outcry testimony in *Luttoschka*. C.T.'s mother testified that in addition to C.T.'s outcry that Vanzandt touched her "private areas," she physically demonstrated where Vanzandt touched her by gesturing with her hands and

using motions "around her breast location." C.T.'s outcry was accompanied by other contextual evidence, such as C.T.'s indication that the contact was "inappropriate," her distraught demeanor while she demonstrated how Vanzandt touched her, as well as Vanzandt kissing C.T. before touching her. *See Arroyo v. State*, 559 S.W.3d 484, 487-89 (Tex. Crim. App. 2018); *see also In re J.P.*, No. 10-22-00122-CV, 2023 WL 1823442 at *2-3 (Tex. App.—Waco 2023, pet. denied). Additionally, Dr. William Lee Carter, Psychologist, explained that C.T.'s inability to recall that Vanzandt touched her breast at trial may have been a trauma response to the sexual abuse.

As the reviewing court, our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Arroyo*, 559 S.W.3d at 487. We find that the evidence, when considered in the appropriate light and pursuant to the standard articulated above, supports a reasonable finding by the jury that C.T. outcried to Vanzandt touching her breast as charged in count two of the indictment. Because the jury is the sole judge of the credibility and weight to be given the witnesses' testimony, it could have believed C.T.'s mother's testimony in spite of C.T.'s inability to recall at trial whether Vanzandt touched her breast.

We find the evidence is sufficient for rational jury to have found the essential elements of the offense alleged in count two beyond a reasonable doubt.  Accordingly, we overrule Vanzandt's first issue.

## Extraneous-Offense Evidence

In his second issue, Vanzandt contends that the trial court abused its discretion in admitting the testimony of E.V. and B.C. over his Rule 403 objection.  *See* TEX. R. EVID. 403.  Both E.V. and B.C. testified pursuant to article 38.37, section 2 of the Code of Criminal Procedure and alleged that Vanzandt committed sexual offenses against them when they were children. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2.  On appeal, Vanzandt contends that the probative value of their testimony was outweighed by the danger of unfair prejudice.   We disagree.

STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision to admit contested testimony under an abuse of discretion standard.  *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).  We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Id.*

In prosecutions for sexual offenses against children, article 38.37 permits the admission of evidence concerning certain extraneous sexual offenses committed by the defendant "for any bearing the evidence has

on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Even when evidence of a defendant's extraneous acts is relevant under article 38.37, the trial court must still conduct a Rule 403 balancing test upon proper objection or request. *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The balancing test is not required to be performed on the record. *Id.* When a trial court conducts a Rule 403 balancing test, it must balance (1) the inherent probative force of the evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

RELEVANT FACTS

The trial court held a hearing outside of the jury's presence to determine the admissibility of extraneous-offense testimony from E.V. and B.C. pursuant

to article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. Defense counsel objected to their testimony as a violation of due process and as more prejudicial than probative under Rule 403. The trial court found the testimony was relevant and admissible under a Rule 403 balancing test and overruled defense counsel's objections.[2]

E.V.'s Testimony

Vanzandt's niece, E.V., was twenty-nine years old at the time of trial. She testified that in April of 2011, when she was sixteen years old, she spent the night at her uncle's house while her infant brother was in the hospital. The next morning, E.V. sat on the bed in the room where she had slept. She was wearing a t-shirt and shorts, but was not wearing a bra. Vanzandt entered the room, sat on the bed with her, and began tickling her. E.V. testified that Vanzandt got on top of her, put his hands under her shirt, and touched her breasts, causing her to feel "extremely uncomfortable" and she stood up. She recalled that Vanzandt became angry.

This incident caused E.V. to reexamine another uncomfortable situation with Vanzandt that occurred when she was eight or nine years old. E.V. recalled that she, her cousin, and her brother were spending the night at her

---

[2] Defense counsel also filed a motion to declare article 38.37 unconstitutional, which the trial court denied. On appeal, Vanzandt does not challenge the admissibility of the testimony pursuant to article 38.37, the constitutionality of article 38.37, or claim a due process violation.

grandmother's house. Vanzandt decided to spend the night as well. E.V. was lying down on the couch when Vanzandt lay behind her and started "spooning" her. She remembered Vanzandt smelling her neck and the back of her head as he was holding her. E.V. felt uncomfortable and went to the bathroom. When she returned, she recalled Vanzandt's mood had changed and he had become angry or upset.

E.V. explained that although she told her parents about what happened in 2011, a report was not filed because her parents were so distraught from her baby brother's passing.[3] In 2021, E.V. discovered C.T.'s report in this case and spoke with a detective about her experiences with Vanzandt.

B.C.'s Testimony

In 2005, when B.C. was in the seventh grade, she was close friends with Vanzandt's daughter and spent a lot of time at the Vanzandt home. Vanzandt was also friends with B.C.'s mother and would eat Sunday meals with B.C.'s family. Though B.C. initially thought of Vanzandt as a "cool dad," she described how their relationship evolved to include sexual activity when she was around thirteen years old.

B.C. remembered a time when she was watching a movie in Vanzandt's living room with a few other children. Vanzandt was lying on the couch and

---

[3] E.V. indicated that her infant brother passed away from SIDS.

B.C. was lying parallel to the couch on the floor. Vanzandt caressed B.C.'s arm and back, which B.C. described as feeling "weird." B.C. testified that she and Vanzandt began texting and messaging each other online. She would message Vanzandt about her "miserable childhood" and began to trust him.

She recalled that when she was thirteen years old, during a Sunday meal with her family at which Vanzandt was present, Vanzandt said he needed to "go get something" and asked B.C. to join him. They went to Vanzandt's house, where he held her while they lay on his bed. B.C. remembered that Vanzandt pulled her tank top down to expose her breasts, which caused the strap to break. Vanzandt then put on a condom and had intercourse with her.

B.C. estimated that Vanzandt would have intercourse with her approximately once per month and testified that Vanzandt would also engage in mutual oral sex with her. She further agreed with the State that Vanzandt would sometimes hug her from behind, wrap his arms around her, touch her "over [her] chest," and reach his hand down to touch her vagina. Their physical relationship ended when B.C. was "driving age" and she realized that her activity with Vanzandt was wrong.

ANALYSIS

Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. *Hammer v. State*, 296 S.W.3d

555, 568 (Tex. Crim. App. 2009). The rule envisions exclusion of evidence only when there is a "clear disparity" between the degree of prejudice of the offered evidence and its probative value. *Id.*

Inherent Probative Force – Factors One and Two

The first and second *Gigliobianco* factors help establish the inherent probative force of the evidence, meaning how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for that evidence. *Gigliobianco*, 210 S.W.3d at 641. Vanzandt acknowledges that extraneous sexual offense evidence is probative of a defendant's character or propensity to commit sexual assaults on children. *See Deggs v. State*, 646 S.W.3d 916, 925-26 (Tex. App.—Waco 2022, pet. ref'd). However, he asserts that the first factor weighs against admission of E.V. and B.C.'s testimony because the allegations were too remote and dissimilar from the instant offenses. We disagree.

While remoteness of extraneous-offense evidence can lessen its probative value, it is but one consideration in the analysis. *See Newton*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd). Here, the complained-of evidence was probative of Vanzandt's propensity to commit sexual offenses of a similar nature against teenage girls of approximately the same age. *See Deggs*, 646 S.W.3d at 926. E.V. was sixteen years old at the time Vanzandt touched her

breasts – the same sexual misconduct alleged in count two against C.T. just a few weeks before her sixteenth birthday. B.C. was between the ages of thirteen and "driving age; so, probably freshman, sophomore year" when Vanzandt allegedly committed sexual offenses against her. While B.C.'s testimony encompassed some sexual acts dissimilar from the allegations in this case, she also agreed that "at the beginning," Vanzandt would hug her from behind, touched her over her chest, and touch her vagina – the same conduct described by C.T. in this case. The extraneous-offense evidence further demonstrated that Vanzandt had a propensity to normalize physical contact with each victim in the presence of other children. E.V. and B.C. testified to instances of Vanzandt holding or caressing them while other children were present. Similarly, one of the witnesses who often spent time at Vanzandt's home testified that Vanzandt would touch and tickle C.T. in his presence, which the witness felt was inappropriate.

Secondly, the proponent's need for the evidence must be taken into consideration. *Gigliobianco*, 210 S.W.3d at 641. Though Vanzandt contends otherwise, this was largely a "he-said/she-said" case. *See Hammer,* 296 S.W.3d at 561-62; *Holland v. State*, 702 S.W.3d 836, 843 (Tex. App.—Waco 2024, pet. ref'd). None of the children who were allegedly present in Vanzandt's front yard when the offenses occurred inside of the residence recalled seeing C.T.

and Vanzandt enter the residence together. No physical or scientific evidence was offered at trial. The trial court could have reasonably concluded that the State had a considerable need for the extraneous evidence to rebut Vanzandt's thoroughly-developed defensive theory of fabrication and challenges to C.T.'s credibility at trial. *See Newton*, 301 S.W.3d at 320; *Holland*, 702 S.W.3d at 843. Defense counsel cross-examined C.T. about experiencing vivid nightmares of crimes committed against her or her family around the time of the offense. Most of the defense witnesses testified to C.T.'s general reputation for untruthfulness, with one witness calling her a "liar" and a "thief," and another specifically asserting that C.T. would fabricate a sexual abuse allegation to avoid losing her phone as punishment from her parents. In cases such as this, Rule 403 should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or the complainant. *See Hammer*, 296 S.W.3d at 561-62.

We find that the first and second factors weigh in favor of admission.

Unfair Prejudice - Factors Three, Four, Five, and Six

The remaining *Gigliobianco* factors address the dangers enumerated in Rule 403 that must substantially outweigh the probative value established by the first and second factors in order for the evidence to be excluded. *Gigliobianco,* 210 S.W.3d at 641-42.

Vanzandt concedes, and we agree, that the fifth factor weighs in favor of admission because the jury was equipped to properly evaluate the probative force of the extraneous-offense evidence. However, he argues that the remaining factors weigh in favor of exclusion because the extraneous offense evidence was inherently inflammatory, increased the likelihood that the jury would convict him out of "revulsion," and took an inordinate amount of time to develop.

With respect to the third factor, we recognize that extraneous-offense evidence of this nature can have a tendency to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial nature of crimes of a sexual nature committed against children. *See Newton*, 301 S.W.3d at 320. The third factor weighs in favor of exclusion.

Vanzandt argues that the fourth factor should weigh in favor of exclusion because the trial court did not give a limiting instruction prior to admitting the extraneous-offense testimony. Vanzandt's trial counsel did not request a limiting instruction when the extraneous-offense evidence was offered, and he objected to the inclusion of an article 38.37 limiting instruction in the jury charge. Even so, the trial court overruled the objection and included an instruction that admonished the jury about the purpose and scope for which

they could consider the extraneous evidence.[4]  The jury charge also identified the specific elements the State was required to prove in each count, thereby redirecting the jury to the main issues in the case.  The fourth factor weighs in favor of admission.

As to the final factor, Vanzandt engages in page counting to argue that the State spent an inappropriate amount of time (approximately one-third of its case) developing the extraneous evidence.[5]  *See Russell v. State,* 113 S.W.3d 530, 546 (Tex. App.—Fort Worth 2003, pet. ref'd) (factor weighed in favor of exclusion where extraneous-offense evidence amounted to about 30% of testimony).  The State argues that nothing in the record suggests that the time needed to present the evidence was so out-of-the-ordinary as to distract the jury from the indicted offenses and classifies this as a neutral factor.  Even assuming this final factor weighs in favor of exclusion, Rule 403 envisions exclusion of evidence only when there is a "clear disparity" between the degree

---

[4] The jury charge limiting instruction stated:

> You are further instructed that if there is any evidence before you concerning an alleged offense or offenses, if any, against a child under seventeen (17) years of age, other than the complainant alleged in the indictment, such offense or offenses, if any, may only be considered if you believe beyond a reasonable doubt that the Defendant committed such other offense or offenses, if any, then you may consider said evidence for any bearing the evidence has on relevant matters, including the character of the Defendant and acts performed in conformity with the character of the Defendant.

[5] *See Newton*, 301 S.W.3d at 322 (Gray, CJ, concurring with a note) (explaining the inherent dangers in relying upon page counting in assessing this factor, namely, that "counting pages is dangerous because it tends to encourage inappropriate behavior and allows us to second guess the trial court based upon information not before the trial court at the time it made its ruling.").

of prejudice of the offered evidence and its probative value. *Hammer*, 296 S.W.3d at 568. There exists no "clear disparity" here. We cannot say that the trial court abused its discretion in overruling Vanzandt's Rule 403 objection.

Accordingly, we overrule Vanzandt's second issue.

## Reformation of Judgments

When, as here, a defendant is convicted of an offense requiring sex offender registration under Chapter 62 of the Code of Criminal Procedure, the written judgment must include a statement of the age of the victim at the time of the offense. *See* TEX. CODE CRIM. PROC. ANN. arts. 42.01, §1(27), 62.001(5)(A). Here, the written judgments state that C.T. was fifteen years old at the time of the offense. The indictment, however, states that each offense was committed on or about October 10, 2019, when C.T. was sixteen years old. In his third issue, without citation to authority, Vanzandt argues that the judgments should be modified to reflect that C.T. was sixteen years old because "[u]sually, the age reflected in the judgment is based on the date alleged in the indictment."

However, "[t]he date an offense was committed cannot be determined by looking at an indictment, it must be determined by looking at the evidence presented at trial." *Allen v. State*, 620 S.W.3d 915, 921 (Tex. Crim. App. 2021). Here, the evidence at trial did not conclusively establish an exact date on which

these offenses were committed; however, C.T.'s testimony that Vanzandt inappropriately touched her in September of 2019, at which time she was fifteen years old, supports the complained-of statements in the judgments.

Accordingly, we overrule Vanzandt's third issue.

## Conclusion

Having overruled all of Vanzandt's issues on appeal, we affirm the judgments of the trial court.

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  September 18, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
Do not publish
CRPM

