I. BACKGROUND
A. Trial
Appellant was a family friend whom K.E. considered to be an "uncle." On previous occasions, Appellant had twirled K.E.'s hair, rubbed her neck, and rubbed her arms. When K.E. was nine years old, her grandfather died. On the day of the funeral, K.E. was taken back to her house to retrieve a handkerchief.
When they were at the house, Appellant began twirling K.E.'s hair and rubbing her neck, but he then did other things to her that were of a sexual nature. Testifying at age 18 at Appellant's trial, K.E. described this additional conduct as follows:
And then he got more-he started touching my chest and it kind of-I'm crying, so I'm not-I don't know how to explain it. I knew it was wrong, I just didn't say anything at the time. And then-
* * *
I don't know what happened. Like I didn't make him stop. He started rubbing on my leg and he kept rubbing on *486 my leg and then he went further up my skirt.
When asked where Appellant's hand went when it went up her skirt, K.E. replied, "My vagina underneath my skirt." When asked whether he went underneath her underwear, K.E. responded, "Yes." When asked where underneath the underwear he touched, K.E. responded, "My vagina."
K.E. described a second incident occurring that year when she came home from school:
He-we were just watching TV and then it started off the same, like he started with my hair, moved down my neck and then go down-just down my chest and then go back to the leg and then it goes back to underneath what I wore, which was a skirt again because that was part of my uniform.
Finally, K.E. described a third incident that occurred when she came home but discovered that she had forgotten her house key. She went to Appellant's house to retrieve a spare key. Once there, she went inside, and they talked for a little while. K.E. described what happened next:
Then it started off the same, started with my hair, to my face, to my neck, to my chest, down to my leg, and back up to my skirt.
When asked whether his hand went inside her underwear, K.E. responded, "Yes." When asked if it was the "[s]ame kind of rubbing as before," K.E. answered, "Uh-huh." When asked whether "there was anything different about it this time than the other times," K.E. moved her head side to side and said, "No."
A jury found Appellant guilty of six counts of indecency with a child-three counts of indecency by touching a child's breast and three counts of indecency by touching a child's genitals.
B. Appeal
On appeal, Appellant challenged the legal sufficiency of the evidence on all six counts. The court of appeals rejected the challenges to the counts that alleged the touching of the genitals,[1] but it agreed with Appellant on the counts that alleged the touching of the breast.[2] Relying upon our opinion in Nelson v. State ,[3] the court of appeals held that the now-adult complainant's use of the word "chest" did not necessarily mean "breast" and that her testimony did not effectively communicate that Appellant touched her breast:
By the time of trial, K.E. was eighteen years old and, therefore, not an unsophisticated child-complainant. K.E. said the touching always started the same way with appellant touching her hair and moving his hand down her neck, chest and leg, and the touching always ended with appellant moving his hand up her skirt. We also note the State did not attempt to have K.E. clarify what she meant by the word "chest" and the State did not ask for more details about where appellant touched K.E. on her "chest." On this record and in view of the holding in Nelson , we must conclude the evidence is legally insufficient to support a finding that appellant touched K.E.'s breasts.[4]
*487 The court of appeals concluded that the evidence was legally insufficient to support a conviction on the counts that alleged the touching of the breast[5] and rendered judgments of acquittal on those counts.[6]
II. ANALYSIS
We are called upon to review the legal sufficiency of the evidence to support a finding of guilt. The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7] This standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[8] In considering whether the inferences drawn by the trier of fact are reasonable, an appellate court must consider the "combined and cumulative force of all the evidence."[9] An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence.[10] A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally.[11]
In Nelson , the defendant had told the victim to unbutton her blouse, that there was "nothing to be afraid about," and that "he was going to check [her] over."[12] When asked what the defendant did after she unbuttoned her blouse, the victim replied, "He rubbed my chest."[13] After looking at dictionary definitions of "breast" and a definition of "chest," the Court concluded that "the definition of 'chest' is broader than the definition of 'breast' and includes a larger area of the body than that encompassed by the latter."[14] One of the definitions of "breast" was "either of the two protuberant milk-producing glandular organs situated on the front of the chest or thorax in the human female." The other definition described "breast" as "[t]he fore or ventral part of the body between the neck and the abdomen, the front of the chest."[15] The definition of "chest" was "the part of the body enclosed by the ribs and the breast bone."[16]
The State contends that Nelson 's holding is outmoded because it preceded the Jackson v. Virginia sufficiency standard and because it preceded significant changes to the indecency-with-a-child statute. The State further contends that modern dictionary definitions treat "breast" and "chest" as synonymous. We need not address the entirety of the State's argument, but we do acknowledge that the statutory scheme has changed since Nelson was decided and that such a change could impact a sufficiency analysis.
*488 In Nelson , the statute at issue made it an offense for a person "to intentionally place or attempt to place his or her hands or any part of his hand or hands upon the breast of a female under the age of fourteen (14) years, or to in any way or manner fondle or attempt to fondle the breast of a female under the age of fourteen (14) years."[17] This statute punished the touching of a breast only when the breast belonged to a female. When the modern Penal Code was enacted, effective 1974, this crime was codified in the offense of "indecency with a child,"[18] with the prohibited conduct described in a definition of "sexual contact."[19] The 1974 definition of "sexual contact" retained the limitation that the breast must belong to a female and added a minimum age requirement: " 'Sexual contact' means any touching of ... the breast of a female 10 years or older with intent to arouse or gratify the sexual desire of any person."[20]
But in 1979 the restrictions on age and gender were removed, so that the text read: " 'Sexual contact' means any touching of the ... breast ... of another person with intent to arouse or gratify the sexual desire of any person."[21] The original version of the bill removed only the age requirement,[22] but the committee substitute also eliminated the requirement that the victim be a female.[23] The bill analysis stated that "what the bill proposes to do" was "to delete the references to age and gender in the definition[ ] of sexual contact."[24]
The modern definition of "sexual contact" applicable to the indecency offense contains no references to age or gender.[25] Even assuming ambiguity about whether the word "breast" refers to a body part belonging to a female or to a female at a certain age of development, the legislative history resolves that ambiguity.[26] Under the current statutory scheme, a "breast" does not have to belong to a female or be developed.
We need not address the larger question of to what extent "breast" may be synonymous with "chest." Assuming that "breast" describes a narrower area of the body than the "chest," we conclude that Nelson is distinguishable and that the evidence in the present case is legally sufficient. The only evidence describing the conduct in Nelson was the statement, "He rubbed my chest." There was more evidence here. K.E. described Appellant's hand as moving "down my chest." She also described this activity as something she "knew ... was wrong," and she described this activity as progressing to touching her vagina. In describing the three occasions in which Appellant touched her in a sexual manner, K.E. stated that he engaged in the same conduct. Although K.E. was an adult when she testified, she was only nine *489 years old at the time of the conduct and may have been more likely to refer to a child's undeveloped breast area as the "chest." We conclude that the evidence in this case was sufficient for a rational jury to conclude that Appellant touched K.E's breast on three occasions and that the conduct of touching K.E.'s breast was done with the intent to arouse or gratify the sexual desire of a person.
We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Arroyo v. State , No. 04-15-00595-CR, 2017 WL 3044596, *3-4, 2017 Tex. App. LEXIS 6632, *9-10 (Tex. App.-San Antonio July 19, 2017).

Id. at *2-3, 2017 Tex. App. LEXIS 6632 at *5-9.

505 S.W.2d 551 (Tex. Crim. App. 1974).

Arroyo , 2017 WL 3044596, at *3, 2017 Tex. App. LEXIS 6632, at *8-9.

Id. at *3, 2017 Tex. App. LEXIS 6632 at *9.

Id. at *5, 2017 Tex. App. LEXIS 6632 at *14.

Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

Id. ; Whatley v. State , 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

Murray v. State , 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

Cary v. State , 507 S.W.3d 761, 766 (Tex. Crim. App. 2016).

Morgan v. State , 501 S.W.3d 84, 89 (Tex. Crim. App. 2016).

505 S.W.2d at 552.

Id.

Id.

Id.

Id.

Id. (citing former Tex. Penal Code , Art. 535d, § 1).

See Tex. Penal Code § 21.11 (Vernon's 1974).

See id. § 21.01 (2).

See id.

See Acts 1979, 66th Leg., p. 373, ch. 168, § 1 (H.B. 43).

H.B. 43, § 1, filed November 15, 1979.

C.S.H.B. 43, Bill Analysis (1979).

Id.

See Tex. Penal Code § 21.11(c).

See Boykin v. State , 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991) (construction of statute limited to plain meaning of text unless text is ambiguous or leads to absurd results that the legislature could not have possibly intended; may resort to legislative history or other extratextual factors if text is ambiguous or leads to absurd results).