

# NUMBER 13-19-00264-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PAUL GARCIA FALCON,                                         **Appellant,**

**v.**

THE STATE OF TEXAS,                                             **Appellee.**

### On appeal from the 25th District Court of Gonzales County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Tijerina Memorandum Opinion by Justice Tijerina

A jury convicted appellant Paul Garcia Falcon of aggravated kidnapping, a first-degree felony, sexual assault of a child, a second-degree felony, and indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 20.04, 21.11, 22.011. The trial court assessed punishment at forty years' imprisonment for the aggravated kidnapping charge and twenty years for each of the remaining charges, with

all sentences to run concurrently. By one issue, Falcon argues that the evidence was insufficient to support the aggravated kidnapping conviction. We affirm.

## I.    BACKGROUND

At trial, V.R.[1] testified that on August 7, 2016, when she was fourteen years old, she walked down the street to take her aunt some leftover dinner. On her way back home, she felt someone, later identified as Falcon, grab her. She "froze" and "went limp." Next, she testified:

> I am getting pulled into the backyard of this abandoned house. No one lives there. And I get pulled back there, and he starts to—he pulls his pants down . . . he forces me to put my mouth on his penis . . . . He's pushing me down, and he forces me down on my knees and forces my mouth on his penis, and he's moving my head back and forth [and] I am trying to push him away. I'm trying to, like, just push him, and he tells me to stop and keeps on forcing me . . . After that, he pulls me back up and starts to undo my pants. And he starts kissing me on my body and he—he picks up my shirt and my bra, and he starts kissing on my breasts. And then he pulls my shorts down—undoes my shorts and pulls them down and sticks his penis in my vagina.

V.R. stated she was in shock, paralyzed, and her body was clenched up. Falcon performed oral sex on her. V.R. testified that she tried to scream, but only air came out of her mouth. V.R. explained that because her home was within sight, her goal was to fight Falcon to get home. V.R. testified that she pushed him, he fell back, she broke away from him, and she ran home. According to V.R., she immediately ran to the restroom, grabbed toothpaste, and began cleaning her mouth while she was crying. She told her parents what happened, and they called police.

---

[1] To protect the identity of children, we refer to them by aliases. *See* TEX. R. APP. P. 9.8(b) cmt. ("This rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

City of Gonzalez Police Officer Gabriel Trevino testified that he and Sergeant Dewey Sumner were dispatched to V.R.'s home regarding a possible sexual assault. Both officers stated that when they arrived, V.R. was crying hysterically, shaking, could not speak, and seemed traumatized. According to the officers, she was able to mutter something about what took place behind a red and white house and gave a general direction of the location. V.R. described her assailant to the officers as a male subject, no shirt, red shorts, a little chubby with the word "Falcon" tattooed across his stomach.

Sergeant Dewey testified that the officers approached the red and white house, which was catty-corner to V.R.'s residence and made contact with Falcon who was in his garage playing video games with his two children. He was wearing red basketball shorts, was not wearing a shirt, and had the word "Falcon" tattooed across his stomach. Both officers stated that Falcon began sweating profusely and was covered in perspiration, which stood out to them. After questioning Falcon, the officers arrested him.

Sergeant Sumner stated that at the jail, he noticed that Falcon had fresh scratches to his lower back. Sergeant Sumner testified that he returned to the crime scene and noticed a "very dark concealed-type area," behind the red and white house. Sergeant Sumner observed a two-foot-long drag mark consistent with V.R.'s statement that she was dragged into the area and assaulted.

City of Gonzalez Investigator Jason Montoya testified that on August 10, 2016, he took daytime photos of the crime scene, which appeared to be a secluded and isolated field behind the red and white abandoned home. Investigator Montoya said the field was "quite a distance from the street." Investigator Montoya observed fresh drag marks, and

3

photos of the marks were admitted in evidence. When Investigator Montoya later interviewed Falcon, Falcon denied interacting with V.R. and denied that he saw V.R. walking down the street. Falcon provided a buccal swab for DNA analysis. It was compared to a sample of DNA taken from V.R.'s left breast, and forensic testing revealed a match.

Gretchen Simmons, a sexual assault nurse examiner, performed a sexual assault examination on V.R. When Simmons examined V.R.'s sexual organ, she observed that V.R. had an acute abrasion and a small linear tear to her posterior fourchette. Simmons explained this was a common area for an injury to occur during a sexual assault. Simmons also observed "red inflamed tissue at the top of the labia minora on the right side, and [an] abrasion with a small tissue separation." According to Simmons, the injuries she observed were consistent with someone "cl[e]nching while someone was trying to force their penis into that area."

Falcon testified that he was outside bathing the dog when he noticed V.R. walk by on three separate occasions. He stated that V.R. was trying to get his attention, and as she walked by him, "she had given [him] the nod." Falcon claims they introduced themselves to each other and decided to meet up behind the red and white house "to get to know each other a little better." According to Falcon, V.R. was sitting on the back porch of the red and white house, waiting for him, and she approached him with a kiss on the lips. Falcon claimed that he told V.R. that if she wanted "to conversate," she needed to wait because he needed to cook dinner for his girlfriend and children. Falcon stated that after he finished cooking and serving his family members, he returned to V.R., and they

4

started kissing. Falcon denied holding V.R. against her will, denied sexually assaulting her, and denied doing anything to V.R. against her will.

The jury convicted him on all three charges, and he was sentenced to forty years' imprisonment for the aggravated kidnapping and twenty years' imprisonment for each of the remaining charges with the sentences to run concurrently. Falcon now appeals.

## II.    LEGAL SUFFICIENCY

Falcon asserts the evidence was legally insufficient to support a conviction for aggravated kidnapping because the State failed to prove beyond a reasonable doubt that V.R. was abducted. Specifically, Falcon argues the evidence was insufficient to show that (1) Falcon restricted the movements of V.R. without her consent and (2) the location of the alleged sexual acts was a place where V.R. was not likely to be found.

### A.    Standard of Review

When reviewing claims of legal insufficiency, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). The fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony and is presumed to have resolved any conflicts in the evidence in favor of the verdict. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.13 (explaining that "the jury is the exclusive judge of the facts"); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (giving deference to the fact finder "to fairly resolve conflicts

in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

"Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim App. 2013) (citing *Hooper*, 214 S.W.3d at 13). Juries are permitted "to draw reasonable inferences as long as each inference is supported by the evidence presented at trial." *Hooper*, 214 S.W.3d at 15. "However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.* at 15–16. We may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder, and we consider only whether the fact finder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

"Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. In this case, a hypothetically correct charge consistent with the indictment would instruct the jury to find Falcon guilty if on or about August 7, 2010, with the intent to violate or abuse V.R., sexually, intentionally or knowingly abducted V.R. by restricting her movements without her consent, so as to interfere substantially with her liberty, by moving her from one place to another, with intent to prevent her liberation, by secreting or holding her in a place where she was not likely to be found. *See* TEX. PENAL CODE ANN. §§ 20.01, 20.04.

## B.    Applicable Law

A person commits the offense of aggravated kidnapping "if he intentionally or knowingly abducts another person with intent to . . . violate or abuse that person sexually." *Id.* § 20.04. For the purposes of kidnapping, "abduct" means "to restrain a person with intent to prevent [her] liberation by . . . secreting or holding [her] in a place where [she] is not likely to be found." *Id.* § 20.01(2)(A). Consequently, "abduct" includes two elements: (1) the restraint of another, which is the actus reus of kidnapping, and (2) the specific intent to prevent liberation, which is the mens rea requirement. *Laster*, 275 S.W.3d at 521 (citing *Brimage v. State*, 918 S.W.2d 466, 475–76 (Tex. Crim. App. 1994)). Under the Texas Penal Code, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." TEX. PENAL CODE ANN. § 20.01(1). "Restraint

7

is 'without consent' if it is accomplished by . . . force, intimidation, or deception." *Id.* § 20.01(1)(A).

## C.   Discussion

### 1.   Restraint

First, Falcon argues that because there was "zero physical evidence that corroborates that any force was actually used against V.R.," it was "irrational for the jury below to find beyond a reasonable doubt that force was used as required under the statute." *See id.* However, "a conviction may be based on the testimony of a single eyewitness." *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Here, V.R. testified that Falcon grabbed her and "pulled her into the backyard" of the red and white house where he proceeded to sexually assault her. She stated, "I kept saying stop," and he would say "No. Be quiet." V.R. stated she kept trying to push him off, "and he tells me to stop and keeps on forcing me." V.R.'s testimony that force was actually used against her did not need to be corroborated by physical evidence. *See Aguilar*, 468 S.W.2d at 77. Nonetheless, Sergeant Dewey and Officer Montoya testified that they noticed drag marks at the scene consistent with V.R.'s testimony that she was dragged against her will, and photos of these marks were admitted into evidence. Sergeant Dewey also testified that he noticed fresh scratch marks to Falcon's lower back, which corroborates V.R.'s testimony that she fought Falcon to escape his use of force against her.

We presume that the jury weighed the evidence and resolved any inconsistencies in favor of the verdict. *See Merritt*, 368 S.W.3d at 525–26; *Santellan v. State*, 939 S.W.2d

8

155, 162 (Tex. Crim. App. 1997) ("[A] kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force."). Therefore, the evidence is sufficient to establish beyond a reasonable doubt that Falcon restrained V.R. with intent to prevent her liberation by forcefully dragging her behind the red and white house against her will. *See* TEX. PENAL CODE ANN. § 20.01(1)(A).

### 2. Intent to Prevent Liberation

Next, Falcon asserts that the State failed to prove beyond a reasonable doubt that the location of the alleged act was a place where V.R. was not likely to be found because it was visible from a public street, and she was seconds away from her home. However, the Texas Court of Criminal Appeals has rejected this argument. The State is not required to prove that Falcon actually secreted or held V.R. "in a place where [s]he is not likely to be found." *See id.* § 20.01(2)(A); *Laster*, 275 S.W.3d at 521. In other words, the State must prove that the defendant restrained another with the specific intent to prevent liberation by secreting or holding the person in such a place. *Id.* at 522 (rejecting the defendant's argument that he grabbed the victim in front of possible eyewitnesses therefore he did not intend to take her because the "State did not have to prove that he actually accomplished his purpose or even that he could have accomplished his purpose . . . only that he had such a purpose."). "[I]f the actor intended at any time during the restraint to secret or hold the victim in a place where [s]he is not likely to be found, the offense is complete." *Price v. State*, 35 S.W.3d 136, 140 (Tex. App.—Waco 2000, pet. ref'd) (rejecting the defendant's argument that the evidence must show that the motel

9

room where the victim was held was objectively a place where she was unlikely to be found); *see also Santellan*, 939 S.W.2d at 162.

V.R. stated that Falcon grabbed her and moved her from the public sidewalk to an area behind an abandoned home. Falcon testified that he and V.R. "agreed to meet" behind the red and white house because he was wary that his girlfriend would see them. Viewed in the light most favorable to the verdict, this testimony supported an inference that Falcon intended to secrete V.R. in a place where she was unlikely to be found. *See* TEX. PENAL CODE ANN. § 20.01; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).The officers also testified that this area was "quite a distance from the street" and appeared isolated and secluded. Sergeant Dewey further stated he was unable to see within the area without his flashlight. The jury could reasonably infer from the testimony that Falcon intended to isolate her from the public street behind the red and white house to sexually assault her. *See Megas v. State*, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Price*, 35 S.W.3d at 140. Moreover, "that the abduction took place in public does not preclude a jury from concluding [Falcon] intended to secrete or hold [V.R.] in [a] place where she was not likely to be found." *See Laster*, 275 S.W.3d at 523. Similarly, the fact that V.R. was seconds away from her home or that the location may have been visible from a public street, as Falcon suggests, has no bearing on Falcon's intent. *See id.* at 521 *("*The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found.").

10

### 3. Summary

The evidence that Falcon grabbed V.R. and pulled her to an isolated area by force supports the jury's verdict that Falcon restrained V.R. and intended to hold or secrete V.R. in a place where she was unlikely to be found. *See id.* at 523 ("As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable."). Thus, after viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Whatley*, 445 S.W.3d at 166; *see also* TEX. PENAL CODE ANN. § 20.04. Affording appropriate deference to the jury's verdict, we therefore hold that the evidence supporting Falcon's conviction is legally sufficient. *See Laster*, 275 S.W.3d at 524. We overrule his sole issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of April, 2021.

11