# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00111-CR

---

**Daniel Matthew Bible, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 33RD DISTRICT COURT OF BLANCO COUNTY
NO. 2193, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Matthew Bible was indicted and convicted of two counts of indecency with a child by contact. *See* Tex. Penal Code § 21.11(a)(1). The conviction he challenges on appeal alleged that he touched the breast of his then-five- or six-year-old daughter, Luna.[1] The other conviction, which he does not challenge on appeal, alleged that he touched Luna's genitals. In his sole issue on appeal, Bible challenges the sufficiency of the evidence presented to support that he touched Luna's breast. We affirm the trial court's judgment of conviction.

---

[1] Because the victims in this case were minors at the time of the offenses they testified about, we will refer to them and other witnesses by pseudonyms to protect their privacy. *See* Tex. R. App. P. 9.10(a)(3).

## BACKGROUND

Luna, who was nineteen-years old during the trial, testified that her father, Bible, "touched" her when she was five or six years old—roughly around 2011. She explained that one day when she was in the first grade, she was at home with her family and was not feeling well. While her siblings watched a rented movie in the living room, she was laying down in her parents' room resting. A few minutes after her siblings left the house to return the movie, Bible came into the bedroom and laid down next to her so that he was on his side behind her. It started as "spooning" and "cuddling." He wrapped his arm around her and across her belly. He moved his hand up her chest and back down slowly. During her testimony, Luna demonstrated the motion for the jury. She testified that he first moved his hand over her clothes but then moved it "back to [her] chest" under her shirt. While touching her chest, Bible moved his hand "crossways." When asked if Bible touched her breast, Luna answered, "No." Luna explained that "[h]e touched the line where the bra sits. . . he stopped right there." She testified that he then moved his hand down to her "bikini line." At trial she explained that the "bikini area" is "[w]here the underwear goes."

During her testimony, the prosecutor gave Luna a yellow highlighter to mark on a diagram of a human body where Bible touched her. Luna complied. When asked if it was "an accurate picture of where he touched," Luna answered, "Yes. That's correct." The marked diagram was admitted into evidence as State's Exhibit 17 and published to the jury.

2



The prosecutor asked Luna if the top horizontal marker line was representing where Bible moved his hand across her chest and if the line stopped where Bible stopped touching her. Luna responded, "Yes. . . . Crossway, how I drew it." When asked if the bottom yellow line included her "vagina" and "pubic area," she answered affirmatively.

Luna testified that after her father touched her, she heard him unzipping his pants. She told him she had to go to the bathroom and that she would come back. She went to the bathroom, locked herself in, waited a few seconds, and then flushed the toilet to make it sound like she was using the bathroom. She then went to her bedroom, closed the door, and waited for her siblings to get home. Luna testified that eventually her older sister Jamie came into the room and Luna told her what had happened. Luna testified that she did not tell anyone else until she told her friend Krystal on Halloween night 2021—about ten years later.

Luna testified that on Halloween 2021, when she was sixteen years old, she and Krystal were hanging out with Luna's mom, and her mom's friend Erin. At this point, her parents were divorced and shared custody of Luna and her two younger siblings. Luna's two

3

older siblings were adults at that time. Luna's mom started questioning why Luna's younger sister Chloe—who was eight or nine-years old at that time—was asking to not leave with their father. Her mom asked Luna if something had happened to Chloe or if Bible had done something to her. After her mom left the room, Luna told Krystal that maybe something had happened to Chloe because something had happened to her. Krystal told Luna to tell her mom. Luna asked Krystal to tell her mom for her.

Krystal testified about learning Luna's "secret" and telling Luna's mom for her. Erin testified that she was present when Krystal told her and Luna's mom what had happened to Luna. Erin testified that both Krystal and Luna were frightened, upset, and crying when they came to her and Luna's mom to tell their "secrets." Krystal told them that Bible had touched Luna "inappropriately."

Luna's mom testified that when Krystal told her that Bible had touched Luna inappropriately, she immediately went to speak with Luna. Luna was crying and rocking while telling her mom that the night of the abuse she was in bed lying there asleep and Bible had crawled on top of her after touching her inappropriately, and that she was able to get away by saying she needed to go to the bathroom. Luna's mom, who works as a nurse, testified that she did not ask Luna for additional details because she believed her role was to protect and not to investigate. However, she called Jamie to discuss Luna's outcry and Jamie replied, "I know, Mom. It happened to me too." Although Luna's mom attempted to convince Jamie to make an outcry to law enforcement, she was initially unwilling to discuss her own abuse except with her mother and Luna.

4

Luna's mom went to the police station the next day to report what Luna told her. Two days later, she took Luna, Chloe, and her youngest child to a children's advocacy center for forensic interviews. No charges were brought against Bible regarding Luna's siblings.

Luna's mom testified that she found out that Bible was a registered sex offender sometime after they started dating but before they got married. She testified that she and Bible divorced in 2018, about three years prior to Luna's Halloween outcry, and that custody issues had already been settled and decided. She agreed on cross-examination that her youngest child was in the process of deciding if he wanted to live full time with Bible or continue splitting time between both parents. She testified that at that time she and Bible split custody evenly but that Luna had stopped going to visit her father unless other adult family members were going to be there.

Forensic interviewer Lana Niemeyer testified that she interviewed Luna at the children's advocacy center. She testified that Luna disclosed to her that Bible had touched her inappropriately when she was five or six years old and in the first or second grade. He touched her chest area first over and then under her shirt. He touched on her "bra line" and moved his hand "back and forth on her bra line." Luna explained to Niemeyer that she was not wearing a bra at that age. Niemeyer testified that Luna demonstrated with her hand where Bible had touched her. Niemeyer mimicked Luna's gesturing for the jury and testified that it included "the breast." Luna told Niemeyer that after touching her bra line, Bible moved his hand down under her underwear to touch her "bikini area." Luna told Niemeyer that babies come out of the "bikini area."

Rebecca Broussard testified that she was the forensic nurse that examined Luna at the children's advocacy center. Nurse Broussard defined "breasts" as "anywhere on the chest

5

where you would find breast tissue." She explained that there is breast tissue on a five- or six-year-old child, and that although it is still developing, it is still considered the breast. When asked if breast tissue would be around the nipples on a five-year-old, Nurse Broussard responded affirmatively. She testified that Luna did not mention her "breasts" during the forensic exam. However, when asked if the highlighted area on State's Exhibit 17 included "breasts," Nurse Broussard replied, "Yes." She testified that it is not unusual for a patient to remember some details and forget others because of the way their brain remembers the trauma.

Lisa Carson, a licensed professional counselor, testified as an expert witness about the effects of trauma on memory and the frequency and causes of delayed outcries. She testified that trauma could cause inconsistencies with memory regarding the traumatic event. She also testified that traumatic events cause different victims to have different "affect"—the way they appear and their facial expressions. She testified that delayed outcries are common and can be caused by fear, by a close relationship with the perpetrator, or by parental divorce.

The State presented and the trial court admitted extraneous offense evidence allegedly committed by Bible against three other victims—all family members of Bible who were children at the time of their alleged abuse by Bible. Bible's younger cousin, Rachel, testified that Bible is seven or eight years older than her. She testified that Bible sexually abused her multiple times when she was eight to twelve years old. She testified that during the first incident, Bible laid on top of her while they were both naked and rubbed his penis on her until he ejaculated. Bible abused her the same way "every chance he got," which was when his family would come in town to visit at her grandfather's house. When she was about eleven years old the incidents changed, and Bible attempted to penetrate her anus with his penis twice on separate occasions and penetrated her vagina with his penis on two separate occasions. After the second

6

vaginal penetration, she became afraid that Bible may start abusing her younger sister. Rachel outcried to her mother. She testified that she was taken by law enforcement to a children's advocacy center and gave an interview, but there was no prosecution. She testified that she was told by her parents and Bible's parents that it was "a family matter" and not a law enforcement matter and that she and Bible would be sent to counseling.

Another alleged victim was Bible's cousin Anna.[2] The trial court admitted exhibits that documented that in 1995 Bible pleaded guilty to aggravated sexual assault of a child and was placed on deferred adjudication probation for ten years. Anna's mom testified that Anna was twelve years old at the time of that offense. Although Bible's age at that time is not reflected in the record, Rachel—who is seven or eight years younger than Bible—testified that she and Anna were friends at school. Court documents supporting his discharge from his deferred adjudication probation were also admitted. Lieutenant Victoria McMain testified that while investigating Luna's allegations of sexual abuse against Bible, she learned that Bible is a registered sex offender.

Jamie, Luna's older sister, testified that Bible sexually abused her multiple times during her childhood. She did not remember at what age it started, but it ended when she was going into the fifth or sixth grade. She testified that it started with Bible rubbing her vagina area over her clothes and then progressed over time to rubbing under her clothes. After that, he progressed to penetrating her vagina with his finger. She testified that once or twice he used a sex toy on her over her clothes. She testified that she did not tell anyone because she was afraid to be taken away from her family.

---

[2] Anna's mother testified that Anna wanted to testify at the trial but had recently passed away.

Bible presented two witnesses to support his defensive theory that Luna's mom had fabricated the allegations against Bible and had manipulated Luna into falsely outcrying against him. One witness was Bible's uncle, who testified that he overheard Luna's mom threaten Bible that "allegations" would be made if he did not keep paying her bills after they divorced and that she brought up his criminal record while making the threat. The other witness was a man unrelated to and unfamiliar with the Bible family, who testified that he regularly rented movies during the time period that the alleged sexual abuse of Luna occurred, and that there was nowhere in town to rent movies at that time.[3]

The State called Luna's older brother as a rebuttal witness. He testified that he was unfamiliar with any of the allegations at issue in the case but confirmed that he would drive to rent movies in town around the relevant time.

After hearing all the evidence, the jury found Bible guilty of both counts of indecency with a child. The jury assessed punishment at twenty-years' imprisonment for each count. *See* Tex. Penal Code §§ 12.33(a), 21.11(d). The trial court ordered the sentences to run consecutively.

## STANDARD OF REVIEW

The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular

---

[3] During closing statements, defense counsel argued to the jury that this testimony regarding the unavailability of movie rentals in town at the time of the alleged abuse was evidence that supported the defensive theory that Luna's story was made up because, counsel reasoned, it demonstrated that she lied about her siblings going to return a rented movie.

offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard requires the appellate court to defer 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). Although factfinders "may not speculate about the meaning of facts or evidence," they are permitted to "draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial." *Id.* (citing *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution." *Id.* (citing *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012)). This is because the factfinders are "the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." *Id.* (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Ramsey v. State,* 473 S.W.3d 805, 809 (Tex. Crim. App. 2015)).

**DISCUSSION**

In his sole issue on appeal, Bible contends that the evidence was insufficient to support that he touched Luna's breast. Specifically, he contends that Luna's reply of "no" when asked if Bible touched her breast, renders any other evidence of breast touching insufficient when she never told anyone that Bible touched her "breast."

The Texas Penal Code provides that:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:
>
> (1) engages in sexual contact with the child or causes the child to engage in sexual contact[.]
>
> . . . .
>
> (c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child[.]

Tex. Penal Code § 21.11. The term "breast" is not defined in the statute. *See id.*; *Chambers v. State*, 502 S.W.3d 891, 894 n.6 (Tex. App.—Texarkana 2016, pet. ref'd) (noting that "breast" is not statutorily defined in indecency statute). Statutorily undefined terms may be defined as typical and ordinary usage allows, and jurors may give them "any meaning which is acceptable in common parlance." *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000).

While there was no testimony that Luna ever used the word "breast" when describing Bible's abuse of her, there was evidence presented that her breast was touched by Bible. It is not required that child sexual assault victims, including adult witnesses testifying

10

about their abuse as children, use the same words as the statute. *Arroyo v. State*, 559 S.W.3d 484, 488–89 (Tex. Crim. App. 2018) (holding that evidence was sufficient to support breast touching when adult witness testified that when she was nine-years-old, defendant moved his hand "down [her] chest," that she "knew [it] was wrong," and that abuse progressed to touching her vagina); *Clark v. State*, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977) (explaining that evidence can be sufficient to show sexual touching even if child victim uses language to describe their body part that is different than used in relevant statute). As the Court of Criminal Appeals has explained, an adult witness describing events from their childhood may be "more likely to refer to a child's undeveloped breast area as the 'chest.'" *Arroyo*, 559 S.W.3d at 489. Although Luna responded "no" when asked if Bible touched her "breast," the jury could have reasonably inferred that Luna did not consider that undeveloped area on her five-year-old chest to be a "breast."[4] *See id.* However, "[t]he modern definition of 'sexual contact' applicable to the indecency offense contains no references to age or gender" and, thus, "[u]nder the current statutory scheme, a 'breast' does not have to belong to a female or be developed." *Id.* at 488.

Luna demonstrated for the jury, without objection, how Bible touched her when he moved his hand up to her "chest," and she described for the jury that he moved his hand "crossways" on her "bra line." *See Rogers v. State*, 756 S.W.2d 332, 337 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (concluding that reference in record to gestures by witness supported guilty verdict when defendant neither requested that record reflect substance of

---

[4] Even if the jurors viewed Luna's response of "no" as a direct denial of the contact with her breast rather than a difference in how she defines "breast," "the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of their testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *cf. Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi–Edinburg 2008, pet. ref'd) (explaining that "when a witness recants prior testimony, it is up to the fact finder to determine whether to believe the original statement or the recantation").

gestures nor objected to them.). Although we do not know how Luna moved her hand while demonstrating, we must view this evidence as supporting the jury's verdict. *See Finley v. State*, 449 S.W.3d 145, 150 (Tex. App.—Austin 2014), *aff'd*, 484 S.W.3d 926 (Tex. Crim. App. 2016) (explaining that "we are to view such demonstrations as supporting the finding of guilt, even when they are not transcribed in the record"); *Morales v. State*, 293 S.W.3d 901, 909 (Tex. App.—Texarkana 2009, pet. ref'd) (noting that jury is in better position to evaluate witnesses especially when there were physical demonstrations or gestures given in jury's presence but not explicitly transcribed or detailed in record).

Further, the forensic interviewer, Niemeyer, testified that Luna gestured during the forensic interview to where Bible had touched her. Niemeyer mimicked Luna's gesturing for the jury and testified that the gestured-to area included "the breast." As the outcry witness, Niemeyer's testimony is substantive evidence in support of the jury's verdict. *See* Tex. Code Crim. Proc. art. 38.072; *Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005). Additionally, Luna drew lines on a diagram to show where Bible touched her and testified that it was accurate. Nurse Broussard, who had not been present for Luna's testimony, testified that the highlighted line on State's Exhibit 17 was touching a breast. Further, the record indicates that Bible was present at trial for the jury to see the size of his hand and determine whether his hand moving along the line drawn by Luna would have touched her breast.

Based on the cumulative evidence presented at trial, we cannot conclude that no rational jury could have found beyond a reasonable doubt that Bible touched Luna's "breast." *See Arroyo*, 559 S.W.3d at 489 (concluding that evidence was sufficient to support "breast" touching when adult victim of child sexual abuse described her "chest" being touched in manner that was "wrong" and in context of other sexual misconduct); *Gonzalez Soto v. State*,

12

267 S.W.3d 327, 334 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (concluding evidence was sufficient to support indecency conviction when victim marked "with an 'X' over the female breast," to demonstrate where he touched her on her "chest"); *see also* Merriam-Webster, https://www.merriam-webster.com/dictionary/breast (last visited Feb. 28, 2026) (including as one of four definitions for "breast" when used as noun, "the fore or ventral part of the body between the neck and the abdomen"). Further, the jury could infer from the totality of Bible's conduct—including moving his hand down to her genitals and then unzipping his pants—that touching Luna's breast was done with the intent to arouse and gratify his sexual desire. *See Arroyo*, 559 S.W.3d at 489 (concluding that evidence was sufficient "for a rational jury to conclude that [defendant] touched [victim's] breast on three occasions and that the conduct of touching [her] breast was done with the intent to arouse or gratify the sexual desire of a person"). The jury also heard evidence of extraneous sexual offenses allegedly committed against three other victims who were related to Bible and children at the time of the abuse. *See* Tex. Code Crim. Proc. art. 38.37, § 2 (allowing admission of extraneous sexual offenses against children in trial of defendant charged with indecency offenses "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant").

Viewing the evidence in the light most favorable to the jury's verdict, we find that there was sufficient evidence upon which a rational trier of fact could have found the essential elements of indecency with a child by contact with Luna's breast. *See Arroyo*, 559 S.W.3d at 489; *Gonzalez Soto*, 267 S.W.3d at 334. We overrule Bible's sole issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed:   March 25, 2026

Do Not Publish