

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00738-CR

Gabriel **GALLEGOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 18-10-13024-CR
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 22, 2026

AFFIRMED

A jury convicted Gabriel Gallegos of one count of continuous sexual abuse of a child (Count One), and two counts of indecency with a child (Count Two and Count Three). In ten issues on appeal, Gallegos challenges the sufficiency of the evidence to support his conviction for Count Two, argues there is jury charge error on all counts, and challenges court costs. We affirm.

## I. Background

Gallegos was indicted[1] for committing sexual offenses against three children, Amy Doe, Barbie Doe, and Connie Doe, who attended the daycare where Gallegos worked. Count One of the superseding indictment alleged that, during a period that was thirty or more days in duration, Gallegos committed two or more acts of sexual abuse against children by penetrating the sexual organ of Amy Doe, and touching the genitals of Amy Doe, Barbie Doe, and Connie Doe. Count Two alleged that Gallegos engaged in sexual contact with a child, Amy Doe, by touching her breast with the intent to arouse or gratify the sexual desire of any person. Count Three alleged that Gallegos engaged in sexual contact with a child, Connie Doe, by touching her breast with the intent to arouse or gratify the sexual desire of any person.

Twenty-two witnesses testified at trial, including: Amy Doe, Barbie Doe, Connie Doe, Gallegos, Amy Doe's mother, Barbie Doe's mother, Connie Doe's mother, Dr. Natalie Kisson (expert in child abuse pediatrics), T.S. (school nurse and outcry witness), K.L. (school counselor and outcry witness), K.G. (child witness), J.R. (child witness), Richard Gonzales (Chief of Police, La Coste), Roy Jumonville (forensic analyst), Jayme Johnston (forensic interviewer), Aurora Garza (Gallegos Daycare employee), Gabrielle Botello (Gallegos Daycare employee), Mary Lou Botello (Gallegos Daycare employee), Yolanda Bishop (Gallegos Daycare employee), Teresa Solis (Gallegos Daycare employee), Esiquio Gallegos (Gallegos Daycare employee), Melinda Gallegos (Gallegos Daycare employee).

Amy Doe, fourteen years old at trial, attended Gallegos Daycare from ages three to six. Amy testified that she sat in Gallegos' lap while he sat on a chair. She could not recall why she sat on his lap but stated that she would do so on her own accord. While she sat on his lap and

---

[1] Gallegos was first indicted on October 22, 2018. He was reindicted by superseding indictment on January 7, 2022.

played with his cellphone, Gallegos touched her vagina with his fingers, both over and under her clothing, sometimes penetrating her. Amy could not remember exactly how many times this occurred, but she said it happened every other day for a span of months. Amy was six years old at the time of outcry.

Barbie Doe, sixteen years old at trial, attended Gallegos Daycare from ages eight to ten. She testified that Gallegos would ask her to sit on his lap while he sat in a chair. While she sat on his lap and played with his cellphone, Gallegos rubbed her thighs and vagina over her clothing. She recalled the touching lasted anywhere from thirty minutes to over an hour. Barbie could not recall exactly how many times this occurred, but she said years passed from the first incident to the last, and that Gallegos touched her every day she attended Gallegos Daycare, sometimes five days a week. Barbie was nine years old at the time of outcry.

Connie Doe, sixteen years old at trial, attended Gallegos Daycare from ages two to nine. She testified that Gallegos touched her vaginal area twice. This first occurred when Gallegos asked her to sit on his lap while he sat in a chair. While she sat on his lap and played with his cellphone, Gallegos touched her breasts, "dragging his hands" to her vagina over her clothing. The second encounter occurred a few days later when Gallegos touched her vagina over her clothes. Connie was nine years old at the time of outcry.

Gallegos denied touching Amy Doe, Barbie Doe, or Connie Doe inappropriately. Gallegos testified that the complainants lied and made the allegations up.

The jury convicted Gallegos on all three counts and assessed his punishment at forty years confinement on Count One, ten years confinement on Count Two, and ten years confinement on Count Three. The trial court ordered the sentences to be served consecutively. Gallegos was ordered to pay $340.00 in court costs for each count, totaling $1,020.00. This appeal ensued.

## II. Discussion

### A.     Sufficiency of the Evidence for Count Two

In issue one, Gallegos argues that the evidence was insufficient to support his conviction for Count Two, indecency with a child by sexual contact, by touching the breast of Amy Doe with the intent to arouse or gratify the sexual desire of any person. He argues the State failed to present evidence that he touched Amy Doe's breast.

In reviewing sufficiency of the evidence, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gutierrez v. State*, 668 S.W.3d 46, 49 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). To do so, we compare the trial evidence to the elements of the crime as defined by a hypothetically correct jury charge. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). The trier of fact is the sole judge of the weight and credibility of the evidence. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally." *Id*. (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)). We must presume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Dobbs*, 434 S.W.3d at 170.

An indecency contact by touching a child-victim's breast requires only a single act. TEX. PENAL CODE ANN. § 21.11(c)(1). Relying on *Nelson v. State*, 505 S.W.2d 551 (Tex. Crim. App. 1974) and *Arroyo v. State*, 559 S.W.3d 484 (Tex. Crim. App. 2018), Gallegos argues that evidence

of him touching Amy Doe's chest does not prove that he touched her breast. In *Nelson*, the Texas Court of Criminal Appeals held that "the definition of 'chest' is broader than the definition of 'breast' and includes a larger area of the body than that encompassed by the latter." 505 S.W.2d at 552. Evidence that the defendant "rubbed [the victim's] chest" is insufficient to support the allegation that he "place[d] his hand against [her] breasts." *Id*. In *Arroyo* the Texas Court of Criminal Appeals held that the use of "chest" as opposed to "breast" may be sufficient to prove sexual contact when there is additional evidence. 559 S.W.3d at 488–89. The additional evidence in *Arroyo* was that the victim: (1) described the appellant's hand as moving "down [her] chest," (2) described the activity as something she knew was wrong, (3) described the activity as progressing to touching her vagina, (4) stated that appellant engaged in the same conduct on the three occasions in which he touched her in a sexual manner, and (5) was only nine years old at the time of the conduct and may have been more likely to refer to the undeveloped breast area as the "chest." *Id*.

Amy did not use the word "breast" to describe where Gallegos touched her. She outcried that Gallegos touched her "chest," "tummy," "stomach," "face," and vaginal area. Amy was six years old when she outcried, and a photo of her from that time was submitted as evidence. The jury could have inferred Amy's breast area was not developed at the time of the incident and that she used the word chest to describe that area, especially since she distinguished her chest from her "tummy" and "stomach." *See In re J.P.*, No. 10-22-00122-CV, 2023 WL 1823442 at *2–3 (Tex. App.—Waco Feb. 8, 2023, pet. denied); *Arroyo*, 559 S.W.3d at 484. Outcry testimony can be legally sufficient evidence to support a conviction without corroboration or substantiation. *Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We

may not simply substitute our judgment for the judgment of the jury. *Isassi* 330 S.W.3d at 638. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Viewing the evidence in the light most favorable to the verdict, we conclude the jury was rationally justified in finding, beyond a reasonable doubt, that Gallegos touched Amy Doe's breast. Thus, the evidence is legally sufficient to support Gallegos' conviction for indecency with a child by sexual contact. We overrule issue one.

**B.      Jury Charge Error**

Gallegos' second through ninth issues allege egregious harm caused by alleged errors in the jury charge. We use a two-step process to review alleged errors in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id*. If there is error, we then determine whether sufficient harm resulted from the error to require reversal. *Id*. at 743–44. The degree of harm necessary for reversal depends on whether the error was preserved in the trial court. *Id*. at 743. Where, as here, the appellant failed to object to the charge error at trial, we will reverse the conviction only if the record demonstrates the error caused egregious harm. *Id*. at 743–44.

A jury charge contains abstract and application paragraphs. *See Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). "The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Id*. "The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

Egregious harm exists if the error "affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Alcoser v. State*, 663 S.W.3d 160, 165

(Tex. Crim. App. 2022). In reviewing the record for egregious harm, we consider the entire jury charge, the state of the evidence including contested issues and the weight of probative evidence, arguments of counsel, and any other relevant information in the record. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). The record must demonstrate that the defendant suffered actual, rather than merely theoretical, harm from the charge error. *Garcia v. State*, 486 S.W.3d 602, 609 (Tex. App.—San Antonio 2015, pet. ref'd).

### 1. Issue Two: Instruction on Breast Touching as Predicate Act

In issue two, Gallegos argues the jury charge for Count One, continuous sexual abuse of a young child, contained error because the abstract paragraph "failed to properly define 'any act' of indecency with a child as expressly excluding touching the breast" of Amy Doe. He argues the error is egregious because "the jury likely relied upon" breast touching as evidence of continuous sexual abuse because in Count Two and Count Three, the jury found him guilty of touching the breast of Amy Doe and Connie Doe.

Continuous sexual abuse of a young child and indecency with a child by sexual contact are distinct offenses codified in different sections of the Texas Penal Code. TEX. PENAL CODE ANN. §§ 21.02, 21.11. "Different statutes are 'some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes.'" *Floyd v. State*, 714 S.W.3d 9, 14 (Tex. Crim. App. 2024) (quoting *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999)).

Count One of the superseding indictment alleged that Gallegos, during a period that was thirty or more days in duration, committed two or more acts of sexual abuse against children by penetrating the sexual organ of Amy Doe and touching the genitals of Amy Doe, Barbie Doe, or Connie Doe. Count Two alleged that Gallegos engaged in sexual contact with Amy Doe, a child,

by touching her breast. Count Three alleged that Gallegos engaged in sexual contact with Connie Doe, a child, by touching her breast.

Assuming, without deciding, that there was error in the abstract paragraph of Count One, the error would not constitute egregious harm. Here, the application paragraphs asked the jury to determine whether the evidence proved Gallegos penetrated the sexual organ of Amy Doe or touched part of the genitals of Amy Doe, Barbie Doe, or Connie Doe. Contrary to Gallegos' argument that the jury "likely" relied upon breast touching in finding him guilty of Count One, the application paragraph for Count One did not require breast touching to find Gallegos guilty of continuous sexual abuse of a young child. As Gallegos states in his brief, the application paragraph for Count One "made no reference whatsoever to touching the breast of the complainants." Conversely, the application paragraphs for Count Two and Count Three specifically asked the jury to determine whether the evidence proved Gallegos "touch[ed] part of the breast" of Amy Doe and Connie Doe or both. Thus, the application paragraph for Count One authorized the jury to convict Gallegos if, during the requisite period, he committed two or more acts of sexual abuse, including sexual contact other than touching the child's breast. *See* TEX. PENAL CODE ANN. § 21.02(c)(2). There is no egregious harm here because the application paragraphs correctly instructed the jury. *See Meanes v. State*, 668 S.W.2d 366, 374–76 (Tex. Crim. App. 1983) (noting that the defendant in a capital murder case did not show how he was harmed when there was an absence of an abstract charge on capital murder but the application paragraph effectively defined capital murder).

Therefore, we overrule issue two.

*2. Issues Three, Four, Five, Six, and Eight: Culpable Mental State Definitions*

In issues three and four, Gallegos asserts that continuous sexual abuse of a young child is a "nature of the conduct" offense, and therefore, the jury charge contained error because it failed

to limit "intentionally" and "knowingly" to the nature of the conduct for continuous sexual abuse of a young child. Similarly, in issues five, six, and eight, Gallegos asserts that the jury charge contained error because it failed to limit "intentionally" and "knowingly" to the nature of the conduct for the lesser charge of aggravated sexual assault of a child. Gallegos further argues that this error allowed the jury to convict him "if he merely had the desire to cause the result (result of conduct) as opposed to the desire to engage in the conduct (nature of conduct)." Gallegos made no objection to the charge at trial.

Assuming, without deciding, that including culpable mental states in the jury charge for Count One was an error, the error did not cause egregious harm. Gallegos' defense theory was that the allegations were false, he attacked the motives of the complainants, and challenged the State's evidence and investigative processes — not his intent or knowledge. Where, as here, culpable intent was not a contested issue at trial, a defendant cannot suffer egregious harm from the charge even if we were to find the definitions erroneous. *See Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) (holding that the defendant's intent, "while it was a part of the State's required proof, was not a contested issue and consequently [the defendant] could not be egregiously harmed by the definition of the intentional and knowing state of mind") (*citing Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.-Corpus Christi 1989, no pet.) ("where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly'")).

Accordingly, we hold that, even assuming without deciding that the definitions contained errors, those errors did not egregiously harm Gallegos. Therefore, we overrule issues three, four, five, six, and eight.

*3. Issues Seven and Nine: The Jury Charge for Counts Two and Three*

Issues seven and nine pertain to alleged errors in the jury charge for Counts Two and Three, indecency with a child by sexual contact. Gallegos asserts that indecency with a child by sexual contact is a "nature of the conduct" offense, and therefore the jury charge contained error because it failed to limit the definitions of "intentionally" and "knowingly" to the "nature of the conduct" element. Gallegos made no objection to the charge at trial.

The elements of indecency with a child by sexual contact are set forth in Section 21.11 of the Texas Penal Code. A person commits an offense of indecency with a child by sexual contact if, in relevant part, "the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact. . . ." The Penal Code defines sexual contact to mean "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.01(2).

Gallegos denied touching the breast of Amy Doe and Connie Doe. As a result, his culpable intent was not a contested issue. Accordingly, even if we were to find the definitions erroneous, Gallegos could not suffer egregious harm from the charge. *See Jones*, 229 S.W.3d at 494.

Therefore, we overrule issues seven and nine.

**C.     Court Costs**

In issue ten, Gallegos argues the trial court erred in imposing $1,020.00 in court costs without the required article 42.15(a-1) ability-to-pay inquiry. Gallegos asks this court to modify the judgments to remove court costs. The State responds that Gallegos failed to preserve this issue for appeal because he failed to timely object.

Article 42.15(a-1) of the Texas Code of Criminal Procedure states:

> Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court

as provided by Article 27.13, 27.14(a), or 27.16(a), a court shall inquire *on the record* whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs.

TEX. CODE CRIM. PROC. art. 42.15(a-1) (emphasis added). This ability-to-pay inquiry is a forfeitable right. *Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024). A defendant must object to the trial court's failure to conduct an ability-to-pay inquiry during or immediately after sentencing to preserve the issue for appeal. *Id.*; *see also Fisher v. State*, No. 05-22-00848-CR, 2024 WL 4284616, at *3 (Tex. App.—Dallas Sept. 25, 2024, no pet.) (mem. op., not designated for publication) (observing "the recent decision by the Texas Court of Criminal Appeals that a defendant can forfeit his right to an on-record inquiry regarding his ability to pay court costs if he does not object during or at the conclusion of the sentencing trial") (citation omitted).

Here, the trial court did not conduct an ability to pay inquiry, and Gallegos did not request an ability-to-pay inquiry or object to the lack of an inquiry on the record. Gallegos argues that he preserved this issue for appeal by objecting in his motion for a new trial. However, an objection to the trial court's failure to hold an ability-to-pay inquiry must be made at the earliest opportunity, at or near the time of sentencing when the grounds for the objection become apparent. *Cruz*, 698 S.W.3d at 269. Moreover, a defendant does not suffer undue hardship by missing out on an ability-to-pay inquiry because "[t]he same relief from fine and costs offered by Article 42.15(a–1)(1)–(4)—delays or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing." *Id*. If Gallegos is unable to pay court costs upon his release, he "need only tell the court of his hardship; and he may do so in person or by motion, letter, or 'any other method established by the court for that purpose.'" *Id*. (quoting TEX. CODE CRIM. PROC. art. 43.035).

Therefore, because Gallegos did not object at trial, he forfeited his complaint. We overrule issue ten.

### III. Conclusion

We overrule all of Gallegos' issues.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH